**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IAN QUARLES,** | : | **Civil Action No. 3:07-CV-1905** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WARDEN JOHN A. PALAKOVICH,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case, which comes before us on cross-motions for summary judgment, calls upon the Court to examine the contours of the Eighth Amendment's constitutional protection against cruel and unusual punishment. Specifically, we are asked to determine the extent to which the Eighth Amendment imposes a duty on correctional officials to protect prisoners from physical hazards in jail due to structural flaws in a prison. In this case these constitutional questions are presented against the backdrop of an episode in which the ceiling of a prison shower is alleged to have collapsed upon an inmate causing him physical injuries.

## II.    Statement of Facts and of the Case

### A.    Factual Background

The Plaintiff, Ian Quarles, is a state inmate housed at the State Correctional Institution, Smithfield. In the summer of 2005 Quarles was assigned to F block at SCI Smithfield. While in F block, Quarles used shower cell #5 on F-block.

According to Quarles, from the time he first began using this facility in July 2005, he and other inmates observed that the ceiling in shower cell #5 sagged severely. (Docs. 1, 83-3.) Although Quarles acknowledges that he never complained to staff about the condition of the shower ceiling, (Doc. 83-3, p.32a), Quarles contends that other inmates notified staff on F block of the deteriorating condition of the shower cell ceiling. ( Doc. 1. ) Quarles also asserts that numerous prison staff were personally observed by him inspecting the sagging ceiling from August through October 2005. (Doc. 86.) Furthermore, Quarles asserts that the subjective awareness of unit staff regarding the decaying condition of the shower cell ceiling was documented by prison officials on October 2, 2005, when prison staff submitted to request for ceiling repairs in this shower unit.(Doc. 1, ¶24.)

Despite the fact that corrections officials were allegedly aware that the cell ceiling was sagging, prison staff continued to use shower cell #5 for inmates up through October 12, 2005. On October 12, 22005 Quarles was using this shower cell

to bathe when the sagging ceiling collapsed, striking him and causing injuries to his head and back. (Doc. 1, ¶¶15-25.)

### B. Litigation History

On October 19, 2007, Quarles filed a complaint in federal court arising out of this shower cell ceiling collapse incident. (Doc. 1) In his complaint, Quarles named the warden, deputy warden, prison facility manager, unit manager and four correctional officers as Defendants. (Id.). Liberally construed, Quarles' complaint alleges that these Defendants violated his constitutional rights under the Eighth Amendment by exposing him to a foreseeably dangerous physical condition, the sagging shower cell ceiling. (Id.) The complaint also contains an allegation of negligence on the part of the Defendants. (Id.) In his complaint Quarles seeks declaratory relief as well as compensatory and punitive damages as a result of the injuries he alleges that he suffered as a consequence of this incident.(Id.)

On November 10, 2009, the Defendants moved for summary judgment on Quarles' constitutional claims. (Docs. 83,84.) In their summary judgment motion, the Defendants contend that in this correctional context an Eighth Amendment claim requires a showing of deliberate indifference to the inmate's safety, which in turn requires proof that the individual Defendants were personally and subjectively aware of an excessive risk to inmate safety but knowingly exposed Quarles to that risk. (Id.)

Asserting that Quarles has completely failed to show subjective awareness of the danger of this sagging ceiling by any named Defendant, the Defendants contend that Quarles' complaint fails as a matter of law. (Id.) Thus, the claimed lack of subjective knowledge of this danger by prison staff is the legal lynchpin of the Defendants' summary judgment motion.

For his part, Quarles has filed his own motion for summary judgment, asserting that he is entitled to a judgment in his favor as a matter of law. (Docs. 86, 88, 89, 94.) In his pleadings Quarles appears to concede that the Eighth Amendment requires proof of deliberate indifference by corrections officials to a physical danger, and acknowledges that such proof requires that prison staff be subjectively aware of some danger to inmates. Quarles argues, however, that "the defendants, except [warden] John A. Palakovich, [Deputy Warden] Paul K. Smeal, and [facilities manager] Donald Reihart, were personally observed entering shower #5 on unit F for various inspections in the months of August-October 2005." (Doc. 86.) Having asserted in this fashion that the personal knowledge requirement is met as to these Defendants through their inspection of the sagging shower cell ceiling, Quarles seeks a judgment on his behalf as a matter of law. (Doc. 88.)

These cross motions for summary judgment have been fully briefed by the parties (Docs. 84, 86, 93 and 94) and are now ripe for resolution. For the reasons set

forth below, it is recommended that summary judgment be GRANTED as to Defendants John A. Palakovich, Paul K. Smeal, and Donald Reihart. As to the remaining Defendants, we recommend that the Defendants' motion for summary judgment be DENIED since there are disputed material issues of fact in this case which preclude summary judgment for these Defendants. Furthermore, we recommend that the Court find that these disputed issues of material fact also preclude summary judgment in favor of the Plaintiff, Ian Quarles, in this case. Therefore, Quarles' summary judgment motion should also be DENIED.

## III.   Discussion

### A.   Cross Motions for Summary Judgment–Standard of Review

Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).   A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The substantive law identifies which facts are material, and "[o]nly disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the

material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

In the instant matter, the parties have filed cross-motions for summary judgment.  The United States Court of Appeals for the Third Circuit has instructed that:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  Thus, a court must apply the foregoing legal standard of review to cross-motions for summary judgment that would be applied to a motion filed by a single party.  Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 2001).  Accordingly, each movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective

burdens, the court must deny the motions. See <u>Facenda v. N.F.L. Films, Inc.</u>, 542 F.3d 1007, 1023 (3d Cir. 2008).

The instant case presents several challenges in terms of applying these legal standards governing summary judgment motions. These challenges stem, in part, from the approach the parties have taken to identifying and isolating factual disputes. For their part, the Defendants have insisted that there are no factual disputes, but have supported that assertion with limited excerpts from the deposition of Quarles, excerpts which lose context and meaning because they are not complete. Quarles, in turn, claims that there are factual disputes and makes factual representations regarding what occurred in the Autumn of 2005, but makes these assertions in his briefs. Allowing for liberal construction of *pro se* pleadings, this litigation style compounds the difficulty of determining whether there are truly disputed material issues of fact, particularly when the Defendants do not specifically address some of Quarles' factual assertions, and Quarles seems to allege that the facts he is reciting were personally observed by him. Notwithstanding these challenges, we can make some preliminary determinations regarding what factual matters appear disputed, and undisputed, by the parties for purposes of addressing these summary judgment motions.

## B. Eighth Amendment Deliberate Indifference Claims and Supervisory Liability: The Controlling Legal Standards

In this case, the gravamen of Quarles' complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his safety when they required him to shower in a cell which had an apparent and obvious structural flaw. Quarles faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Quarles must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). Beers-Capitol v. Whetzel, is leading case in the Third Circuit addressing deliberate indifference in a prison conditions, and we believe that the legal guidance set forth in that decision, as applied to the facts of that case, is ultimately dispositive as to the claims in this action.

As a starting place, the Third Circuit has explained the basic requirements of

a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in

cases involving prison safety or prison conditions, the relevant state of mind "is one

of 'deliberate indifference' to inmate health or safety."  Id.  As discussed more fully

below, this deliberate indifference standard "is a subjective standard under Farmer –

the prison official-defendant must actually have known or been aware of the

excessive risk to inmate safety."  Id.

As explained in Beers-Capitol, in cases based on allegations of deliberate

indifference on the part of prison officials or other supervisory defendants, the

Supreme Court has "rejected an objective test for deliberate indifference; instead it

looked to what the prison official actually knew rather than what a reasonable official

in his position would have known." Id. at 131.  Specifically, the Supreme Court "held

that 'a prison official cannot be found liable under the Eighth Amendment for

denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. Although the Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does

11

not give rise to an Eighth Amendment claim, see, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005), the Third Circuit did interpret Farmer to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence to showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information or indicators that presented a substantial risk to inmate safety. See Farmer, 511 U.S. at 842-43 ("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk.") (emphasis added).

Even where a plaintiff has presented sufficient evidence to allow a factfinder to reach the inference that a prison official had knowledge of the risk on the basis that risk was obvious, it is clear that an inference may not be compelled, and that the prison official must be permitted to show that he was actually unaware of the risk in

12

question.  Beers-Capitol, 256 F.3d at 132.  Lastly, a prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm.  Id.

These general guiding constitutional principles have been applied by the courts in a series of cases involving inmate allegations that correctional staff exposed prisoners to dangerous and unsafe physical conditions inside a prison. See e.g., Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(Eighth Amendment claim resulting from injuries from prison table collapse); Vidaurri v. Buss, No. 09-580, 2010 WL 625016 (N.D. Ind. Feb. 11, 2010)(Eighth Amendment claim resulting from injuries from prison ceiling collapse); Bennett v. Philadelphia, No. 07-2794, 2008 WL 4211701 (E.D. Pa. Sept. 9, 2008)(Eighth Amendment claim resulting from injuries from prison ceiling collapse); McKnight v. McDuffie, No. 405-183, 2007 WL 1097280 (S.D. Ga. April 9, 2007)(Eighth Amendment claim resulting from injuries from prison bunk collapse); Barrand v. Donahue, No. 06-694, 2006 WL 2982051, *2 (N.D.Ind.Oct. 16, 2006)(Eighth Amendment claim resulting from injuries from prison ceiling collapse).

These cases all set exacting standards for establishing Eighth Amendment violations premised upon a failure to protect an inmate from a dangerous physical condition inside a prison, providing that in this setting:

> Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." A defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." Negligence does not satisfy the "deliberate indifference" standard, and it is not enough to show that a prison guard merely failed to act reasonably. Deliberate indifference can be inferred only where defendants know there is a strong likelihood rather than a mere possibility that violence will occur. Prison officials cannot be expected to eliminate the possibility of all dangers. Thus, the right to reasonable protection does not include the right to protection from random acts.

Barrand v. Donahue, No. 06-694, 2006 WL 2982051, *2 (N.D.Ind.Oct. 16, 2006)(citations omitted).

These principles apply with particular force to Eighth Amendment liability claims brought against prison supervisors. A claim of a constitutional deprivation cannot merely be premised on the fact that the named defendant was a prison

supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).Thus, to state a cause of action against a defendant in a civil rights action, a plaintiff must make some showing of personal involvement by the supervisory personnel. See Rizzo v. Goode, 423 U.S. 362 (1976). The supervising official's misconduct cannot have been simply a failure

to act, but the official must have played an "affirmative part" in the alleged misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). As the United States Court of Appeals for the Third Circuit observed in <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205 (3d Cir. 2001):

> "[I]t is not enough for the plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Rather, the plaintiff must identify specific acts of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the identified deficiency and the ultimate injury."

<u>Id</u>. at 216, (quoting <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).

## C. The Supervisory Defendants Are Entitled to Summary Judgment

Citing these exacting standards of proof for Eighth Amendment claims based upon exposure of inmates to hazardous condition in prison, the Defendants seek summary judgment as to all Defendants. In essence, the Defendants contend that the proof of one essential aspect of an Eighth Amendment violation–subjective knowledge of a dangerous condition by prison officials–is completely lacking in this case as to all of the Defendants. In the absence of such proof of subjective knowledge, the Defendants contend that Quarles' complaint fails as a matter of law.

With respect to three supervisory Defendants–Warden John A. Palakovich, Deputy Warden Paul K. Smeal, and facilities manager Donald Reihart–we agree that the current record shows a complete lack of subjective knowledge of the potential danger posed by this sagging shower ceiling and therefore recommend dismissal of these Defendants. As we have noted, with respect to prison supervisors, the Supreme Court has "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001) (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

In this case, proof of subjective knowledge by prison supervisors regarding this allegedly dangerous condition is completely lacking. Indeed, Quarles himself implicitly concedes a complete failure of proof on this element of a constitutional violation as to these Defendants. In his pleadings, Quarles candidly acknowledges that that "the defendants, *except [warden] John A. Palakovich, [Deputy Warden]*

17

*Paul K. Smeal, and [facilities manager] Donald Reihart*, were personally observed entering shower #5 on unit F for various inspections in the months of August-October 2005." (Doc. 86.)(emphasis added.) At this time, there is no proof that these prison supervisors had personal knowledge of these allegedly unsafe conditions and condoned them. Therefore, Quarles' claims as to these Defendants fail since: "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See e.g., Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(Dismissal of Eighth Amendment claim resulting from injuries from prison table collapse); Vidaurri v. Buss, No. 09-580, 2010 WL 625016 (N.D. Ind. Feb. 11, 2010)(Dismissal of Eighth Amendment claim resulting from injuries from prison ceiling collapse); Bennett v. Philadelphia, No. 07-2794, 2008 WL 4211701 (E.D. Pa. Sept. 9, 2008)(Dismissal of Eighth Amendment claim resulting from injuries from prison ceiling collapse); Barrand v. Donahue, No. 06-694, 2006 WL 2982051, *2 (N.D.Ind.Oct. 16, 2006)(Dismissal of Eighth Amendment claim resulting from injuries from prison ceiling collapse).

**D.** **As to the Remaining Defendants There Are Disputed Material Issues of Fact Concerning Their Knowledge of This Allegedly Dangerous Condition Which Preclude Summary Judgement**

The Defendants contend that the same failure of proof which compels dismissal of the case as to the supervisory Defendants, Palakovich, Smeal and Reihart, infects Quarles' claims as to the remaining corrections Defendants, and compels dismissal of this case in its entirety. Specifically, asserting that the "plaintiff acknowledges that he did not tell anyone of the allegedly sagging ceiling and there is no admissible evidence on this record that anyone else did either", (Doc. 84, p.5), the Defendants insist that:

> Viewing the material facts of this case in the light most favorable to the plaintiff, it is apparent that he cannot meet the subjective element of the deliberate indifference standard. Even assuming *arguendo* that plaintiff is able to prove that he suffered an injury as a result of the drywall falling upon him, he cannot point to evidence demonstrating that the named defendants were actually aware of a risk of harm to plaintiff and they chose to ignore that risk. This absence of proof on a critical element of his claim, and upon which he would have the burden of proof at trial, renders all other facts immaterial.

(Doc. 84, p.4.)

We disagree. On the present factual record we believe that there are unresolved questions concerning the state of knowledge of the remaining corrections Defendants

regarding the condition of this shower cell ceiling at the time of the ceiling collapse which preclude summary judgment at this time.

In particular, we find that the Defendants' focus on whether Quarles complained to correctional staff about this sagging ceiling does not dispose of this factual issue. While we note that it appears that the Plaintiff has conceded that he did not complain to prison officials about this condition, (Doc. 83-3, p.32a) Quarles has also clearly alleged in his pleading responding to this summary judgment motion that"the defendants, except [warden] John A. Palakovich, [Deputy Warden] Paul K. Smeal, and [facilities manager] Donald Reihart, *were personally observed* entering shower #5 on unit F for various inspections in the months of August-October 2005." (Doc. 86.)(emphasis added). We construe this assertion to be a factual representation by Quarles that he personally observed these Defendants inspecting the sagging ceiling in shower cell #5. Construed in this way, Quarles' statement creates a factual issue regarding the subjective knowledge of unit staff regarding this dangerous condition, a factual issue that may well turn on credibility determinations and falls outside the province of a summary judgment motion.

Furthermore, Quarles has asserted that the decaying condition of the shower cell ceiling was also documented by prison officials on October 2, 2005, when prison

staff submitted to request for ceiling repairs in this shower unit. (Doc. 1, ¶24.) This repair request, which was allegedly submitted ten days before the collapse of the ceiling, also speaks directly to the issue of subjective knowledge by some prison officials concerning the presence of a potentially dangerous condition in shower cell #5 in October 2005. As Quarles noted in a declaration contesting this summary judgment motion:

> The defendants, . . . and staff members were placed on notice through inmates, personal observation, documents, or notice from their subordinates of the structural damage, sagging or bow to the ceiling in shower #5 of Unit F months or weeks before its collapse (citations omitted). Furthermore, on 10-2-05, S. Weidig, CO II, K. Krum, CO I, R. Harper, CO I, and J. Sherdon, CO I, worked the 2 p.m.-10 p.m. shift on Unit F when it was documented in the Unit F Housing Log that "shower # 5 ceiling is bowing or sagging." (citations omitted).

(Doc. 90, ¶6.)

The Defendants' efforts to avoid confronting this factual dispute by alleging in their reply brief (Doc. 93) that Quarles has merely lodged complaints against unknown "John Does" are unavailing and unpersuasive. Quite the contrary, it appears that Quarles is alleging facts which would permit an inference that unit staff

Defendants had personal knowledge of this dangerous condition. These allegations are not directly rebutted and define a disputed material factual issue in this case.[1]

Thus, entirely aside from the issue of whether Quarles himself lodged any complaints regarding this unsafe condition, the current record in this case reveals that the Plaintiff has alleged that "the [remaining] defendants, . . . , were personally observed entering shower #5 on unit F for various inspections in the months of August-October 2005," and some defendants are alleged to have requested repairs on this decaying ceiling ten days prior to its collapse.[2] These facts–which are plainly disputed by the Defendants–are material to the issue of whether the remaining

---

[1] As we have noted, this case presents challenges in terms of applying the legal standards governing summary judgment motions, due in part to the approach the parties have taken to identifying and isolating factual disputes Should there exist facts that have been uncovered in discovery that speak directly to these factual matters, but have not been presented in support of a summary judgment motion, the parties should renew their motions in a more factually focused fashion.

[2] Because the Defendants have moved for summary judgement solely on the grounds that the Plaintiff has failed to show that they were subjectively aware of the danger of this sagging ceiling, the current record does not permit us to reach any conclusions regarding whether proof that a prison official was aware of this structural problem, and had requested repairs, negates a claim of deliberate indifference to Quarles' safety. McKnight v. McDuffie, No. 405-183, 2007 WL 1097280 (S.D. Ga. April 9, 2007)(Eighth Amendment claim resulting from injuries from prison bunk collapse dismissed where evidence showed prison official was informed of danger and agreed to order repairs, action of prison officials ordering repairs rebutted claim of deliberate indifference))

Defendants had the degree of subjective knowledge of a dangerous prison condition necessary for civil liability under the Eighth Amendment, which in this setting requires that "[a] defendant must have 'actual knowledge of impending harm easily preventable'" Barrand v. Donahue, No. 06-694, 2006 WL 2982051, *2 (N.D.Ind.Oct. 16, 2006). Since the resolution of this question, in the current posture of this case, turns on disputed, and material, issues of fact relating to the knowledge of the Defendants concerning the condition of this cell ceiling, summary judgment presently is not appropriate as to these remaining Defendants. Therefore, it is recommended that the Defendants' motion for summary judgment (Doc. 83) be denied as to the remaining corrections June 22, 2010 Defendants.

### E. Disputed Issues of Fact Also Preclude Summary Judgment for Quarles on His Cross-Motion for Summary Judgment.

Finally for his part, Quarles has also filed a cross-motion for summary judgment, contending that he is entitled to judgment as a matter of law on this Eighth Amendment claim. (Doc. 88.)

Quarles' cross-motion for summary judgment warrants only brief consideration by the Court. While Quarles' assertion that he observed a number of the Defendants inspecting the shower cell creates a factual question regarding whether these

23

Defendants were aware of the danger posed by the sagging ceiling, that disputed fact–standing alone–does not entitle Quarles to a judgment in his favor as a matter of law. Rather, Quarles' cross-motion for summary judgment simply defines a contested fact which must be resolved as a matter of fact in the course of this litigation. Since Quarles' pleadings simply describe a factual dispute, and plainly do not define a legal entitlement to a judgment on behalf of the Plaintiff, his motion for summary judgment should also be denied.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motion for summary judgment (Doc. 83) be GRANTED as to Defendants Palakovich, Smeal and Reihart, but DENIED as to the remaining Defendants at this time. IT IS FURTHER RECOMMENDED that Quarles' cross-motion for summary judgment (Doc. 88), be DENIED.

> The parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 22d day of June, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge